Perhaps, before you get started, I can find out how the Apolles Council, how you wish to divide your time, just so I'll know. Your Honor, we are going to divide time evenly in five minutes. Mr. Sturgill will go first, then Mr. Downing will speak for five minutes, then Mr. Roth will speak for five minutes. Thank you. Good morning. May it please the Court, I'm Deborah Lovi Reyes on behalf of the plaintiffs, and I'd like to reserve three minutes for rebuttal. Three. Yes, ma'am. Thank you. And I hope to focus on two issues this morning. I'd like to talk about the District Court's flawed assumption permeating all of its rulings below, where the Court erroneously held that even if Operation Turnaround was a sham, and even if the defendants were full participants in the wider investigation's charade, that any fraud that occurred during the wider investigation was somehow not relevant to these plaintiffs' Fourth Amendment and Brady claims. And I'd also like to talk about the discovery misrepresentation that happened below. At a minimum, the summary judgment ruling should be vacated, because all of plaintiffs' strategic decisions, all of plaintiffs' arguments, and all of the District Court's rulings were based on a serious misrepresentation of the record. Beginning with the District Court's holding about the wider investigation, the District Court found that defendants' fraud or bolstering of the confidential source in Operation Turnaround in general was somehow not relevant to the probable cause question, or that it was only relevant, the defendants' conduct was only relevant to the extent that they corroborated their source during the wider investigation, but it was not relevant when they found out that their source was lying, they found out that their source was framing people, they found out that their source was dealing his own drugs on the side, was stealing money from the government during that investigation. One thing that we know is that probable cause in the case against these plaintiffs relied on the defendants believing their confidential source. The government already conceded that fact. When the government moved to vacate the convictions of these plaintiffs, the government, in its motion, informed the court, these cases depended on the reliance of this confidential source. He has no reliability, he's completely untrustworthy, and they vacated the convictions and they moved to dismiss the indictments. Now, I don't think there's any dispute that we've at least provided evidence that the confidential source was routinely stealing, lying, framing people, dealing his own drugs. There's a tremendous amount of evidence that's been produced on that fact. We've also produced a dispute of fact that the defendants were aware of this and that they helped hide it. And that's all of the evidence that you see below about the stand-in impersonators, and they were terrible stand-in impersonators. They were sometimes the same stand-in would pose for several different suspects. You had stand-ins who looked nothing like the person they were supposedly impersonating. You had doctoring of audio recordings. You had modifications of transcripts to cover for when the source screwed up or when the imposer screwed up, when they referred to themselves in the third person or when the real dealer's name was mentioned. You'd have the transcripts altered. You had false reporting going on where they would omit a detective who was there who said that the suspect was being misidentified, or they would add a detective to bolster the identification even when that detective wasn't there. And you had false affidavits and testimony. So where the district court's error happened is that the district court held that even if the confidential source was wholly compromised and was framing and stealing, that that isn't relevant to the question of probable cause. And that ruling is erroneous because there is no way that the defendants, or at least there's certainly a dispute of fact, a jury could find that the defendants were feigning reliance on their confidential source and that there was no probable cause here. Can I ask you a question about just how . . . I don't think . . . you can't go about this in argument because you'd never be able to accomplish it. This is a question generally about how to approach this case. Obviously, there's plenty of evidence in this record of just very egregious improprieties and wrongdoing in the investigation. But when we look at this case, the law with respect to this area is we've got to look at each plaintiff and what happened to each plaintiff, and we've got to look at each defendant and the involvement of each defendant in what happened to the particular plaintiff under consideration. You don't disagree with that? I do not disagree with that at all. Under that framework, though, as it came time to do, this indictment is dependent on what our source has told us. Our source claimed to have a drug deal with this particular suspect. And in the back of their minds, they also know and this source is framing people left and right. And we are helping him in a lot of ways to frame people left and right. And so it doesn't really matter whether these particular plaintiffs were guilty. It doesn't really matter whether these particular defendants had their misdeeds in this particular transaction. If they had a conspiracy to prop up a false informant through an entire investigation from the first transaction almost to the last transaction. Well, that might be true with respect to your conspiracy claim. But with respect to your individual claims, you've still got to look at each plaintiff and each defendant, right? Yes, you absolutely do. But with regard to each plaintiff, they're all dependent on you have to believe this source. And we know that, like I said, the government conceded that in the criminal matter. You have to be able to believe this source because that's what the basis of each of these criminal cases is dependent on. And they knew that their source was false. So for each individual plaintiff, they know that. In addition to, obviously, we do have a strong conspiracy claim here as well. But, you know, I don't think that's the only approach that works here. I think that both approaches are strong and that both depend on the confidential source being reliable and the defendants knew that he wasn't. You'd be hard-pressed to find more egregious facts. We've certainly created a dispute effect on that issue. Before I turn to the discovery issue, I do want to briefly say something about the FDCA claim preclusion under all of this. And that is just, in light of the deceptions with regards to the record, which I'll talk about next, the plaintiffs do intend to file a Rule 60 motion when jurisdiction is restored to the district court. And that motion would be futile without this court holding that the conduct and operation turnaround in general is relevant to plaintiffs' malicious prosecution claim. I mean, our position here really turns on the evidence throughout the wider investigation is relevant to these plaintiffs, not because the plaintiffs are trying to steal other people's due process violations, but because those due process violations apply to these particular plaintiffs because they were indicted based on an informant that everybody knew was false. Well, in some cases, though, there was more evidence against the person than just what Bray said or did on the thing. You're painting with a little too broad a brush there on the thing. You know, it's like when you're examining a search warrant affidavit and there's an allegation that there's false statements in it. One of the things you look at is if you at least as to some of these people, it seems to me that kind of analysis has to be indulged in. Well, that's a fair point, Judge Guy, except that the officers were all involved. And I go through great lengths through the briefs to explain how, yes, maybe Lucas participated in this particular transaction, but Lucas also participated in the Joshua Webb one in close proximity where he falsely identified a stand-in. And Lucas also was changing transcripts in order to cover for slip-ups. And so, yes, there were other officers sometimes involved in corroborating, but that's where all the evidence of what their misdeeds were throughout the corroboration and the wider investigation become so important. The things they were supposedly doing to corroborate their source were things that they were routinely using in order to hide their source's falseness. This is a little bit different from a lot of false arrest claims in that the plaintiffs were arrested based on warrants that were procured as a result of the grand jury's finding a probable cause to indict them, correct? That's correct. So we've got to apply that standard. I mean, it's a little different from officers out in the field making, without a warrant, making... That's correct. And that's addressed with extensive case law in the briefs. I mean, the omissions in the reports, the false reports throughout this case are what form the basis underlying the false indictments. I mean, you had Lucas testifying falsely and you had all of the... This whole thing was a house of cards. All of the reporting around Bray was propping him up as if he was some reliable source that everybody could count on when all of the officers were winking and looking the other way or affirmatively hiding the things that this source was doing to frame people with regularity. Turning briefly, because I see I'm almost out of time here, to the discovery issue. I'd also like to point out the defendants backed the plaintiffs into a corner here by seriously misrepresenting the record and they should not be rewarded for this tactic. If nothing else, we should have an opportunity to at least explore the evidence that they said that they gave us and that they never did. Each defendant has falsely informed the court that the entire internal files, that all the investigative files, that all of the video and audio recordings were given. They made that representation below. They've made it twice to this court and they made it a bunch of times in numerous parallel actions and now thousands of pages later, 38 CD-ROMs of recordings later, we learn that that's not true. We now know there are large categories of documents that they never tendered that would fall within the category of what they claim to have given us. There are five categories of DEA forms that would show the payment records that we would use to show that this informant was stealing because there were often discrepancies between what he was given and what he claimed to be giving back. We learn there's a DEA confidential source file that we've never seen, that there were handwritten notes of witness interviews and surveillance notes that they were required to keep under the DEA we've never seen, that Lucas had operational plans and that's really important because what the defendants were doing was they were changing the facts afterwards. So if you knew who was supposed to be there beforehand, you can cross-reference it to the DEA 6 about who supposedly corroborated the source after and that's where you find these kinds of discrepancies. Cross-referencing has been the key to finding much of the misdeeds in this case and so these huge categories of documents that we've never received are really relevant. We also have a bunch of discovery that we received after the fact and summary judgment that was never considered by the court below. Do you wish to address briefly the municipal defendants? Sure, does the court have a particular question? Well, were they in or out correctly? We believe we still have live claims absolutely against the municipal, that the municipal claims fell because the court, again, used this sort of broad brush about... What have you shown relative to custom or policy or whatever, there's no respondent superior liability. That's correct, that's correct, your honor. The limits on discovery have hurt us. We think we'd ask that that be, we'd ask for all of it to be reversed or at minimum vacated for an opportunity for discovery. That piece of it didn't have sufficient discovery to push it to the level we would like. I see I'm out of time. I'm not sure that that's an adequate answer I could... Mr. Sturgill? Good morning, may it please the court. I'm Lowell Sturgill from the Department of Justice. On behalf of the United States and federal officials, Robert Cross and Thomas Verheille. Judge Gibbons, you were correct to note at the beginning that in order to defeat a properly submitted motion for summary judgment based on qualified immunity, the plaintiff has to evidence violated each of the plaintiff's rights. And the district court here correctly held that the plaintiffs cannot make that showing with respect to the federal officials I represent, Mr. Verheille and Mr. Cross. First of all, the record is clear that neither of those individuals was involved materially in the drug buys that led to these defendants' arrests. They did not identify these individuals. They also did not participate in the drafting of the arrest warrants or the decision to prosecute. They did not testify before the grand jury. They did not have any meaningful involvement in the decision to prosecute. Not only that, Judge Jarrell Bray never claimed that he set up any of these plaintiffs, and he never identified Verheille or Cross as having worked with him at any time. And in of corruption that was existing here in this community. What I'm concerned about is the climate under which the district judge made his ruling, continually referring to the defendants as, they're guilty, they're guilty, they're guilty. You know, the three of us have all been trial judges, and we know the influence that a trial judge has. But what concerns me is the climate that existed at the time the judge made his ruling. Would you say that it was conducive to the presumption of innocence? These men were found not guilty, and the prosecution withdrew their guilty pleas. So for the court to continue to say, you're guilty, you're guilty, you're guilty, disturbs me quite a bit. I understand, Your Honor. And it's important to note that the district court made those references to the plaintiff's guilt in response to the issue about whether there was probable cause to indict or arrest them, and that that would defeat their claim. But Verheille and And the district court, in addressing this argument, our argument, didn't rely on the plaintiff's guilt. What the district court said was, even apart from whether the plaintiff split guilty to this or not, they still have to show that each defendant did something and participated to violate their rights. And when you look at that part, sorry, that part of the opinion, you'll see that the district court didn't rely on the guilt of these individuals. I think that the language that Judge Keith was referring to comes exclusively, if not primarily, from the part of the district court opinion that finds that there's a judicial estoppel based on the guilty pleas. And it is correct to say that probable cause must be determined as of the time the arrest is made. And so the guilty plea establishes facts at a different point in time. So the district court's use of judicial estoppel could be fairly attacked on that basis, correct? Well, in fact, the United States and Verheille and Cross have not defended the district court's reliance on judicial estoppel for the reasons that you've said. But again, our arguments are independent of that. Again, the plaintiffs have to show that Verheille and Cross violated their rights, and they can't show that on this record. In fact, the record shows that Verheille and Cross were DEA officials. The DEA wasn't even involved in this investigation at the time three of these plaintiffs, their drug buys, occurred. That's Spires, Matthews and Brooks. The plaintiffs have never explained how somehow Verheille and Cross could be responsible for those violations. And again, I think that's sort of emblematic of the entire position they've taken in the case. I'm almost out of time, but I do want to address first the judgment bar, the FTCA's judgment bar, bars all the claims against the federal defendants because there's been a judgment on the FTCA claim, and the plaintiffs waived any appeal of that by not addressing it at all in their opening brief. And then finally, I want to say something about this misrepresentation claim, and that's that it's completely disingenuous because as we've showed in our motion papers, it's been clear to the district courts and to the plaintiffs from the very beginning when the United States turned over the documents in question, what those documents were. And the contemporaneous records, the protective order notices say what they are. They are the all of the trial testimony in the Lucas criminal trial and all the exhibits in that trial. And that's what we turned over, and that's what we told them they were getting. Now what happened was when the district court wrote its opinion, it picked, it described those documents by referring to the Lucas trial exhibit list, which we've given you in our motion papers. And those, those, that exhibit list does describe the documents the way the district court did it. So that's what we said in our appeal briefs, but there's, there's no dispute here about what's going on. And the plaintiffs themselves said that their real remedy is a 60, is a rule 60 motion in the district court. So I don't know why they're asking you to look through all these documents because one thing, the legal issue they say they're pursuing here isn't dependent on what happens with those documents at all. I've never, I don't understand that either. So the proper remedy, if you don't just deny the motion for the reasons we've stated in our brief, first of all, it's improperly presented and it's been waived. So I'm out of time here. Thank you, Mr. Downey. May it please the court, your honors. My name is Dan Downey. I'm here on behalf of Richland earlier, um, plaintiff's counsel, appellant's counsel did not mention my clients a great deal during a oral argument. And I would submit to the court that that was also the case with respect to the brief that was filed in this case. Uh, in reality, there is, is, is nothing, uh, no evidence in the record of this case suggesting that my clients, captain faith or sergeant mayor did anything improper, uh, throughout the course of this investigation. And it bears noting how this investigation started. Uh, the investigation started in attempting to solve a murder, not in attempting to, uh, round up, uh, 25 suspects involved in drug activity. Uh, there was a murder in December of 2004. Jarrell Bray had provided, uh, reasonable and useful information with respect to a breaking and entering. He was signed up as a confidential informant and drug buys were undertaken in an effort to resolve this murder. And most of the, the drug buys that are issued in this case occurred prior to DA involvement. Uh, the DA did not become involved until after, um, a, a, a usage of Mr. Bray in Cleveland where they obtained evidence with respect to a drug dealer up there. And Mr. Lucas and various members of the task force came down in late August, early September, uh, depending on, on whose recollection you believe and, and took part in, in the Robertson buy and the Lovett buy and the Brooks buy after that. Uh, but in large part, the buys prior to DA involvement, um, they were all undertaken by, uh, my, my two clients and detective Metcalf. And those buys were good buys. Um, there's been one issue with respect to Jason Westerfield. Um, but otherwise all those buys were good buys. And when judge Nugent says they were guilty and, and obviously that's not a verbiage that I used either. Uh, I think what he's really saying is there was not only probable cause, uh, to arrest these folks and to prosecute them, but they actually did these acts, whether they've been sentenced or not. Counsel, you're interpreting, uh, the judges, uh, what he meant by saying that, uh, as I read his opinion, I reached just as I looked at it, that the district court seems to have forgotten that the government itself initiated the withdrawal of the guilty pleas because of, um, the pleas were compromised. And there, there seems to be no reason from my standpoint why the district court should continue to emphasize, uh, a belief that these defendants were guilty. And Your Honor, for purposes of today, I will accept your, your, your issue with respect to that particular opinion. In my view, there was probably, I don't want you to interpret the judge's opinion, but I'm just speaking about, uh, the climate, uh, that exists when you have the trial court having that type of attitude. And you, and you know, Your Honor, what I would direct you to would be the analysis that the court entered into with respect to probable cause, with respect to false arrest, with respect to malicious prosecution. My clients, uh, played no role with respect to the prosecution of these gentlemen. They made buys, they used Jarell Bray, they corroborated, uh, the drug buys as they're required to do with respect to, uh, Sixth Circuit precedent. Uh, when Mr. Bray was being controlled by them, they made controlled calls, they searched him, they followed the vehicle to the buy scene, they attempted to put eyes on the transaction, they followed him back and they debriefed him. And the things that they did are consistent with Sixth Circuit precedent for finding somebody to be providing reliable information. My clients were not consulted with respect to the grand jury proceedings, did not take part in it. Uh, my clients were not called as, uh, by, by U.S. Attorney Serrano, uh, to, to provide them with information prior to the grand jury proceedings. Uh, they, my clients did not testify in any criminal trial. Obviously in this case, the six that we have here, there were no trials. And I think, you know, with respect to how Judge Nugent saw the case, uh, certainly he came forward with the judicial estoppel argument. Um, we did not make that argument before his court, but I would submit to, to, to the court that there is no, uh, underlying constitutional right that's been violated with respect to these six individuals. And there's been still no statement by, by plaintiff or appellant's counsel with respect to how any of the individual defendants in this case, uh, did anything that was constitutionally proper with respect to their particular clients. In fact, it is evidence, I believe that this court could consider that each and every one of these folks admitted that they did the act. I think that is evidence that can be considered whether or not we make a determination as whether they're guilty. See, that's, that's the problem. They, the admission that they did the act, but the prosecution said the admission was compromised and therefore they withdrew the pleas. The admission is just, that's the problem. That's the sine qua non of my concern. Well, and I would submit to the, that you're referring to now, they admit it. I would submit to the court that they did it under duress. I, I would dispute that in my mind, Your Honor, but, but I think it is certainly something that this court can consider when looking at what these folks said, because most certainly, uh, Judge Nugent in this instance, in this case found that there was probable cause to arrest these folks and prosecute them. He also found that my clients weren't involved in the prosecution of these individuals. And I would also submit to the court that, uh, with all due respect, uh, to Appellant's Counsel, that other, uh, judges that have addressed some of the factual issues that has been raised in, in their brief with respect to Roosevelt Williams, for instance, who claims he was not present at the pie, that summary judgment was granted by the trial judge who heard all the evidence in the case. Uh, and that case was never appealed to, to the Sixth Circuit. It's, it's a final judgment. Uh, and so I would submit that, you know, at the trial court level, the judges that have largely addressed these cases have all come to the conclusion, uh, that none of these officers knew or should have known that Jarrell Bray was setting up potentially innocent people in drug buys. And I've used up all of my time. Thank you, Your Honors. May it please the court. I'm Thomas Roth and I, uh, represent Mr. Lucas. Uh, I would like to address something that, uh, Your Honor, uh, Judge Keith, uh, said and, uh, you asked question, weren't the, uh, the pleas compromised? I think what you have to do is you have to look at the context under which the United States Attorney's Office from Cleveland decided to dismiss not only individual cases, but all of the Mansfield cases. There were about three or four and I, I, I tried the criminal case on behalf of Mr. Lucas. So I've been involved in this matter for a very, very long time. And the initial problems with the cases were not these cases. There's never been any suggestion that there was anything wrong with the convictions in these cases. The problem cases were the neighbor's case, the Geneva, France case, the Lowe's gold Ballard case, and a few others. The Cleveland United States Attorney's Office properly, in my view, looked at what Mr. Bray had done in those cases and said, we just don't want to deal with this man anymore. We think that what he did in those cases taints this entire proceeding to the point where we're going to dismiss them all. We're not going to do it piecemeal. We're going to do it all. Never was there any suggestion by the government that the admissions or the guilty pleas by these plaintiffs were in any way to the judge seeking dismissal indicated that very clearly, some of these people are clearly guilty. We have no doubt of their guilt. As a matter of fact, they pleaded guilty. So we're not saying that we're not making any claim other than that. We do not want to deal with this informant, Mr. Bray anymore. He's so bad, anything that he's touched, we're dismissing. That was the government and Mr. Bray made at Lucas's criminal trial. Mr. Bray, early on in his cooperation with the government, made all sorts of false allegations against Mr. Bray and other individual defendants in this case, suggesting that they were all in cahoots with him in his deceptions. By the time Mr. Lucas was indicted, the government had learned that none of that was true. Now, Mr. Lucas was indicted in any event, but at the Lucas trial, Mr. Bray took the witness stand and admitted that he acted completely alone in all of his deceptions, in his use of stand-ins, in his use of his own drugs, when he stole money. Well, you know, Mr. Bray, it's hard to know whether Mr. Bray could be believed on any of the occasions on which he spoke, but I mean, I don't know that I would, it's just hard to know. Well, but Your Honor, the government also made that admission in its opening statement, in its closing statement. They admitted that Mr. Lucas neither knew about nor participated in any of Mr. Bray's deceptions. And that was, and the only point I want to make, Your Honor, is that, Your Honor. Whatever, the government still took Mr. Lucas to trial. They didn't prevail, I think, but. Right, he was acquitted. But they had other theories. Their theory at the trial was not the theory that plaintiffs use here, and that Mr. Lucas was involved in a conspiracy with Mr. Bray, because nobody says that. There's no evidence at all of that at all, anywhere. In terms of the discovery, since I was involved in the criminal case, I know about the discovery. In discovery, we submitted as exhibits in the Lucas criminal trial, the entire files of the United States Attorney's Office, Richland County Prosecutor's Office, and DEA. They were, on consent, they were submitted into evidence at the Lucas criminal trial, and they were part of an exhaustive exhibit list. Counsel, this case is before us on the motion of granting a summary judgment. Is that correct? Yes, Your Honor. And is it your position there are no genuine issues of material fact that should go to the jury in this case? On the issue of qualified immunity, yes, sir. All right. Well, Lucas wasn't even involved in any of the transactions. DEA got involved in September of 2005. All of the transactions for three of these defendants, Mr. Matthews, Mr. Brooks, and Mr. Spiers, all occurred substantially before DEA even got involved. So none of the federal defendants have any personal involvement at all in any of those transactions. That's the analytical process that you have to go through with each of the plaintiffs and each of the defendants. Right. Correct. And it's also important that none of these plaintiffs are alleging fabrication of evidence as to them at all. What they're doing is they want to say, oh, there was fabrication of evidence, Mr. Bray said, against neighbors. We want to borrow that. There was fabrication of evidence against Mr. Ballard. Let us borrow that. There was fabrication of evidence against Geneva, France. Let us borrow that. Because they don't have any fabrication of evidence or any Brady material as it relates to them. Thank you, Your Honor. Thank you. As Judge Keith started out, this was a cesspool of corruption. And it wasn't just one informant. It was law enforcement, too. We've at least created dispute of fact on that. And the government's concessions regarding that point of what they could prove beyond a reasonable doubt have no bearing. There's a lot of evidence here. Thank you. Do you disagree with Mr. Roth as far as the analytical framework for the case? You indicated during your principal argument that you agree that it's each plaintiff, each defendant. Oh, these are consolidated appeals. I will acknowledge that. But if you look at the standard for malicious prosecution, at the time of the defendant's misdeeds, was it clearly established? Plaintiff A can't benefit from Plaintiff D's malicious prosecution. I agree with that. Our theory of the case is that defendants fabricated. Forget that there are these other plaintiffs out there. Defendants fabricated reliability of a confidential source over time. They had this wide investigation, forgetting that these other suspects are also plaintiffs. They had this wide investigation where they invented a confidential source as if he could be reliable. And they doctored transcripts and they made false reports in order to build out of nothing this reliable confidential source. And so when it came time to initiate charges against these plaintiffs, they knew there was no probable cause. They knew that they had this fake informant who was framing people left and right. And yeah, we're not sure which ones he's framed and which ones he hasn't, but we know that he's mostly framing. And we're going to pretend like we can rely upon him in support of probable cause. Although you just conceded that the analytical framework is, as Judge Gibbons suggests, you continue to use the word they, which means you really want to paint with a broad brush as to all of these people. Well, in my brief, I break down what each one's misconduct does. I don't feel I have the time to do that here. But each one of them has fully participated. Each of the defendants has fully participated in falsely bolstering this informant. While some of them were changing the transcripts, other of them were false reporting. Some of them were lying to the prosecutors. Some of them were doctoring the audio transcripts. But I go very carefully. I don't try and just lump them all in as one. My brief goes very carefully explaining each defendant's misconduct, how they were each participating in this ruse. But each of these defendants, for example, each of these defendants did not testify before the grand jury, did they? That's correct. Just Lucas did. And so, you know, the grand jury's finding of probable cause rises or falls really based on the truthfulness of Mr. Lucas in his grand jury testimony. I mean, I don't see how you get to benefit from everybody else's involvement with respect to the finding of probable cause. Well, both under the conspiracy theory and also under Sykes. I think what Sykes says is that when they've influenced the decision, and I think that all of these guys working together to bolster a false informant participated in that influencing of the decision to prosecute. But they may have participated in the broader corruption. But it's pretty hard to find any evidence that any of them directly influenced Lucas with respect to any of his grand jury testimony. And there may even be some issues about, you know, the full state of Lucas's knowledge. But I guess I would have to disagree. I mean, I think if Verheyle and Ansari hadn't hidden the fact that their source was stealing government funds, if Faith hadn't hidden the fact that they were stealing government funds, if Metcalfe hadn't hidden the fact that they were framing in the Roosevelt-Williams case, in the Nabors case, I think if you look at each of their conduct, there's no way, if the prosecutor knew any of the things that these defendants were hiding, there's no way this prosecution would have gone forward. And that's what you saw in the criminal case when they vacated it all. Okay. So respectfully, we'd ask that summary judgment be reversed or at least vacated for an opportunity for further discovery. Thank you. We thank you all for your argument. We'll consider the case carefully.